UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEVON D. JACKSON,

        Plaintiff,

v.                                                        Case No. 07-C-919

MICHAEL THURMER, RICK RAEMISCH,
MATTHEW J. FRANK, GARY ANKARLO,
DEBORAH L. FISCHER, COREY F. FINKELMEYER,
DAVID E. HOEL, KEVIN POTTER, and
JOHN DOES, sued as Unknown Officers 1, 2, & 3,

        Defendants.

## ORDER

Plaintiff Jevon D. Jackson, who is incarcerated at the Waupun Correctional Institution (WCI), lodged a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. He paid the $350.00 filing fee.

Regardless of the plaintiff's fee status, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir.

1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for *pro se* prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded,

2

a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The plaintiff was incarcerated at WCI at all times relevant. The defendants are: Michael Thurmer, WCI Warden; Rick Raemisch, Deputy Secretary of the Wisconsin Department of Corrections (DOC); Matthew J. Frank, former Secretary of the DOC; Gary Ankarlo, Supervisor of Psychological Staff; Deborah L. Fischer, Staff Psychologist; Assistant Attorney General (AAG) Corey F. Finkelmeyer; AAG David E. Hoel; Attorney Kevin Potter, DOC Chief Legal Counsel; and John Does, sued as Unknown Officers 1, 2, and 3.

**Claim 1: Inhumane Conditions of Observation Status**

The plaintiff alleges that he was subjected to inhumane conditions of confinement from May 18, 2007, until May 21, 2007, while he was on observation status. The plaintiff was placed on observation status after he informed defendant Fischer that he was suicidal and had recently attempted to kill himself by placing a plastic bag over his head. The plaintiff's property while on observation status was limited to a "security smock" to wear and a black mat to sleep on. A security smock is a sleeveless garment which only covered the plaintiff from his upper torso to his mid-thigh.

From May 18 to May 21, 2007, the plaintiff was confined to cell #A-226 for 24 hours per day. During that time period, he was unable to sleep due to the freezing temperature in the cell and his entire body shook uncontrollably throughout the night. The first night, May 18, 2007, the plaintiff asked defendant John Doe Unknown

3

Officer 1 for a blanket to keep warm, but was told: "You're on Obs. [Observation Status], we can't give you anything." *Id.* at 6. Later that night, defendant John Doe Unknown Officer 2 looked into the plaintiff's cell and asked him how he was doing. The plaintiff explained that he could not stop shaking from the cold temperature and requested that the heat be turned on in his cell. Unknown Officer 2 responded that he could not control the heat. While on observation status, on eleven different occasions the plaintiff asked for a blanket or for the heat to be turned on, explaining how cold it was in his cell. Each time, he was denied access to a blanket and to the heat being turned on. The plaintiff claims that defendants John Doe Unknown Officers 1 and 2 violated his rights under the Eighth Amendment by refusing to provide him with the basic necessity of warmth.

The plaintiff filed an offender complaint regarding the inhumane conditions on observation status. On June 11, 2007, the plaintiff received the ICE report indicating that defendant Thurmer dismissed with modification the offender complaint. The plaintiff filed an appeal to the CCE, however, defendant Raemisch dismissed the complaint and defendant Frank accepted that as the decision of the Secretary. The plaintiff claims that by dismissing his offender complaint and failing to address the freezing temperatures that he endured while on observation status, defendants Thurmer, Raemisch, and Frank violated his Eighth Amendment rights.

"An allegation of inadequate heating may state an eighth amendment violation." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) (quoting *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987)). Some conditions, which taken singly

4

do not constitute cruel or unusual punishment, may in cumulative effect violate the Eighth Amendment. *Dixon*, 114 F.3d at 643 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citing low nighttime cell temperature plus a failure to issue blankets as an example)). The plaintiff may proceed on an Eighth Amendment claim against defendants John Doe Unknown Officers 1 and 2 based on his allegations regarding cold cell temperatures in observation status.

However, the plaintiff's allegations against defendants Thurmer, Raemisch, and Frank fail to state a claim. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a complete act of misconduct does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Accordingly, the plaintiff may not proceed on a claim against defendants Thurmer, Raemisch, and Frank.

**Claim 2: Placing Suicidal Inmate in a Double Cell**

The plaintiff alleges that on July 17, 2007, he was informed that he would be moved from a single cell to a double cell, meaning that he would share a cell with another inmate. The plaintiff wrote to defendant Warden Thurmer requesting that he remain in a single cell because of his suicidal thoughts and urges. However, on July 18, 2007, the plaintiff was moved to a double cell. Defendant John Doe Unknown Officer 3 is responsible for assigning the plaintiff to a double cell.

On July 20, 2007, the plaintiff was called into the office of a staff psychologist who informed him that his boss, defendant Ankarlo, had directed him to talk to the

5

plaintiff regarding his letter to the Warden. The plaintiff explained his constant struggles with suicidal thoughts and urges to the psychologist and asked if he would authorize the plaintiff to be placed back in a single cell. The psychologist informed the plaintiff that he would not authorize such a transfer. After moving into the double cell, the plaintiff's suicidal urges intensified and soon thereafter his dosage of Prozac was doubled. The plaintiff claims that by refusing to acknowledge that it is improper to place an inmate with a suicidal disposition in a double cell, defendant Unknown Officer 3 has violated and continues to violate his Eighth Amendment rights.

The plaintiff filed an offender complaint regarding his placement in a double cell but defendant Warden Thurmer dismissed the complaint. The plaintiff appealed that decision, but defendant Raemisch dismissed the complaint and the decision was accepted as the decision of defendant Secretary Frank. The plaintiff claims that by dismissing his offender complaint and continuing to force the plaintiff to be housed in a double cell, defendants Thurmer, Raemisch, and Frank have violated and continue to violate his Eighth Amendment rights.

According to the plaintiff, on October 18, 1984, in Case No. 79-C-1018, United States District Judge Robert W. Warren issued an order enjoining WCI staff from "continuing or instituting any practice of double-celling prisoners with known suicidal tendencies . . . ." (Compl. at 11.) Judge Warren also directed the DOC "to take reasonable steps to preclude and prevent such double celling [of suicidal prisoners]." *Id.* at 12. On July 20, 2007, the plaintiff sent a letter to defendant Assistant Attorney General Corey F. Finkelmeyer informing him that defendant Warden Thurmer and

6

other WCI staff were deliberately disregarding Judge Warren's ruling by forcing the plaintiff, an inmate with a known suicidal disposition, to live in a double cell. The plaintiff sent copies of the letter to defendants Assistant Attorneys General David E. Hoel and Kevin Potter. The plaintiff never received a response. He claims that by being in a position to act upon such an established constitutional violation, but failing to do so, defendants Finkelmeyer, Hoel, and Potter have violated and continue to violate the plaintiff's Eighth Amendment rights.

To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997).

The mere practice of double celling is not *per se* unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). The double celling at issue in *Rhodes* did not violate the Constitution because it was made necessary by the unanticipated increase in the prison population and did not lead to deprivations of essential food,

7

medical care, or sanitation. *Id.* at 348. Moreover, it did not increase violence among inmates "or create other conditions intolerable for prison confinement." *Id.*

The Eastern District of Wisconsin case from the 1980's to which the plaintiff refers is *Delgado v. Cady*, 576 F. Supp. 1446 (E.D. Wis. 1983). In that case, the court recognized that double-celling is "among the most debasing and most dehumanizing aspects of present prison life. It rips away the sense of privacy-of dignity-which can make bearable many things which could not otherwise be endured." *Id.* at 1448. However, the court held that, absent proof that the double-celling caused the prison to fail to provide the minimal essentials, it was not unconstitutional. *Id.* at 1451. However, the court also stated:

> Nor does the Court agree with defendants that *coerced* double celling of suicidal prisoners is appropriate. There is little question that the presence of another human being in a cell with an inmate who displays suicidal tendencies may discourage suicide. However, it is cruel and unusual punishment to *force* an inmate to share a cell with a suicidal person solely to act as a prophylactic agent. It is the duty of the staff and not the inmates to provide surveillance over suicidal inmates. Accordingly, the Court will order defendants to devise a new system for evaluating prisoners with psychologic or psychiatric problems prior to double celling them.

*Id.* at 1452.

The plaintiff claims that Judge Warren's order has been violated because defendant Unknown Officer 3 forced him to reside in a double cell. However, the court in *Delgado* found that the practice of double-celling with a suicidal prisoner might be unconstitutional from the perspective of the non-suicidal prisoner because

8

it was unfair to subject him to the suicidal tendencies of another.  From the plaintiff's perspective, double-celling was actually found to be safer than single-celling because there was less likelihood that an inmate would successfully commit suicide. There is no indication that placing the plaintiff in a double cell led to a deprivation of essential food, medical care, or sanitation.  Further, there is no indication that such placement was done with deliberate indifference.  To the contrary, the plaintiff alleges that a staff psychologist met with him and they discussed his suicidal thoughts and urges two days after he was placed in the double cell.  Based on the foregoing, the plaintiff may not proceed on a claim based on placement in a double cell.

In sum, the plaintiff may proceed on his Eighth Amendment "Inhumane Conditions of Observation Status" claim against defendants John Doe Officers 1 and 2.  The plaintiff will need to use discovery to identify the John Doe defendants.  The remaining defendants and claim will be dismissed.

The plaintiff has moved for the appointment of counsel.  Indigent civil litigants have no absolute constitutional or statutory right to be represented by counsel in federal court.  *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992); *McKeever v. Israel*, 689 F.2d 1315, 1318 (7th Cir. 1982).  This court is authorized to request, but not to compel (*see Mallard v. United States District Court*, 490 U.S. 296 [1989]), an attorney to represent an indigent civil litigant pursuant to Title 28, United States Code, § 1915(e)(1).  *Jackson*, 953 F.2d at 1071; *McKeever*, 689 F.2d at 1318.  However, this court has no access to funds to compensate attorneys for

9

such representation. This court, therefore, appoints counsel under § 1915(e)(1) only in the rare case where the failure to appoint counsel would be so fundamentally unfair that the plaintiff's due process rights would be violated. *McNeil v. Lowney*, 831 F.2d 1368, 1371 (7th Cir. 1987).

The threshold requirement for appointment of counsel under § 1915(e)(1) is whether a plaintiff has made a reasonable, but unsuccessful, effort to retain counsel, or whether the plaintiff was effectively precluded from making such efforts. *Jackson*, 953 F.2d at 1073. If a plaintiff has made no effort to secure counsel, the motion must ordinarily be denied outright. *Id.* Once this initial requirement is met, the court, in exercising its discretion with regard to plaintiff's request, must address the following question: given the difficulty of the case, does this plaintiff appear to be competent to try the case himself and, if not, would the presence of counsel likely make a difference in the outcome of the case. *See Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).

In this case, the plaintiff has provided evidence that he has attempted to obtain legal counsel on his own. However, the issues in this case appear at this stage to be straightforward and uncomplicated. Moreover, the plaintiff's filings indicate that he is capable of litigating this case himself. Therefore, at this time, the court does not believe that the presence of counsel is likely to make a difference in the outcome of this case. Accordingly, the plaintiff's request for appointment of counsel will be denied.

# ORDER

**IT IS THEREFORE ORDERED** that the plaintiff's request to proceed *in forma pauperis* (Docket #2) be and hereby is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #4) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that defendants Michael Thurmer, Rick Raemisch, Matthew J. Frank, Gary Ankarlo, Deborah L. Fischer, Corey F. Finkelmeyer, David E. Hoel, Kevin Potter, and John Doe Unknown Officer 3 be and hereby are **dismissed**.

**IT IS FURTHER ORDERED** the plaintiff use discovery to identify defendants John Doe Unknown Officers 1 and 2.

**IT IS FURTHER ORDERED** that the plaintiff serve upon each defendant a copy of the complaint, a waiver of service form, and/or the summons, and a copy of this order.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R.

Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 8th day of January, 2008.

BY THE COURT:

/s/ J.P. Stadtmueller
J.P. Stadtmueller
U.S. District Judge